IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| THEODORE H. DAHN, IV., : | |
| : | |
| Petitioner, : | |
| : | CIVIL ACTION |
| vs. : | File No. **1:05-CV-79 (WLS)** |
| : | |
| TOMMY REDDISH, Warden, : | |
| : | |
| Respondent. : | |

**RECOMMENDATION**

The Petitioner filed this § 2254 action on or about June 10, 2005, in which he challenges his December 29, 1997, Turner County jury trial convictions and sentences for aggravated child molestation, child molestation, and aggravated sexual battery. Petitioner's convictions and sentences were affirmed on direct appeal. *Dahn v. State*, No. A98A2303 (Ga. App. Dec. 14, 1998) (unpublished). On October 26, 1999, Petitioner filed a state habeas corpus petition. Following evidentiary hearings on September 8, 2000, and October 9, 2001, the state habeas court denied relief in an order dated September 8, 2003. The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on May 9, 2005, and his motion for reconsideration on June 6, 2005.

Petitioner filed the instant petition on June 13, 2005. A recommendation to deny the petition was entered on September 10, 2008 (Doc. 38), which was subsequently adopted by the district judge to whom this case is assigned on March 31, 2009. (Doc. 42). Petitioner appealed the decision to the Eleventh Circuit Court of Appeals, which remanded the case for consideration of claims of ineffective assistance of counsel which were not addressed in either the

recommendation or order denying relief. (Doc. 64). The district judge then remanded the case to the undersigned for review of the unaddressed claims (Doc. 66), which Petitioner has addressed in his supplemental brief (Doc. 62).

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) established standards for habeas review of state court decisions. Amended § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 120 S. Ct. 1495, 1519 (2000).

Moreover, the Court held that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 1522.

2

An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 1520. "In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 120 S. Ct. at 1520). Accordingly, the petitioner must first establish that the state habeas court's adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

This court is "bound under 28 U.S.C. § 2254(d) to afford factual findings of state [appellate] courts a presumption of correctness." *Towne v. Dugger*, 899 F.2d 1104, 1106 (11th Cir. 1990). The habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Georgia Court of Appeals found the facts as follows:

> The evidence showed that Dahn molested the four year old victim several times and in various manners. Testifying at trial regarding the various acts of molestation and the victim's account of it were: the victim's stepsister; an emergency room physician who had examined the victim; the victim's mother; two GBI agents who interviewed the victim; and the clinical psychologist who had counseled the victim. The molestation was also shown through the use of anatomically correct drawings which the GBI agent used in interviewing the child. The testimony showed that the victim's statements were consistent over time and that she repeatedly stated that Dahn was the only person who had performed the acts of molestation. The medical testimony, though not conclusive, was consistent with the victim's account.

*Dahn v. State*, No. A98A2303 (Ga. App. December 14, 1998)(unpublished).

In his original petition, Petitioner raises the following grounds for relief:

3

Ground 1 raises Petitioner's "actual innocence."
Ground 2 alleges juror misconduct when law enforcement officers employed by Petitioner's former employer stopped a juror and searched the juror when he was on his way to Petitioner's trial based upon an anonymous tip.
Ground 3 alleges prosecutorial misconduct when the state used hearsay evidence, withheld exculpatory evidence, and bolstered its evidence by unheard evidence.
Ground 4 raises several incidents of judicial error
(1) when the trial court inquired into the numerical division of the jury when the jury appeared to be divided on a verdict,
(2) when the trial court gave a prejudicial corrective instruction, and
(3) when the trial court limited the jury's deliberations.
Ground 5 raises ineffective assistance of counsel in the following ways:
(1) failure to object to hearsay testimony,
(2) failure to attack the "mail order degree and qualifications" of the state's expert,
(3) failure to object to inflammatory photographs,
(4) failure to object to bolstering testimony, and
(5) failure to "take advantage of the State's own scientific test which possibly provided exculpatory evidence."

Petitioner raises several additional grounds of ineffective assistance of counsel in his supplemental brief (Doc. 62), which the undersigned has designated as ground 6.

Ground 6 raises ineffective assistance of counsel by counsel's:
(1) failure to object to hearsay testimony,
(2) failure to object to conversation between victim and witness Erik Erickson outside the courtroom,
(3) failure to object to prosecutor's opening statements regarding witnesses and testimony that were never introduced into evidence,
(4) failure to make a motion in limine to prevent hearsay testimony from the state's witnesses,
(5) failure to have an independent psychologist, or other medical expert examine the victim,
(6) failure to present an alibi defense,
(7) failure to raise issues of prosecutorial misconduct on appeal,
(8) failure to object to "stacking" of charges and sentences, and
(9) failure to question a juror regarding an incident with a police officer, and failing to request a required *Remmer* hearing.


***Grounds 1-3 and 4(1) Procedural Default***

Respondent contends that these grounds are procedurally defaulted. In ground 1, Petitioner alleges "actual innocence." In ground 2, Petitioner contends juror misconduct in that law enforcement officers employed by Petitioner's former employer stopped a trial juror and

searched the juror based upon an anonymous tip. In ground 3, Petitioner alleges prosecutorial misconduct in that the State used alleged hearsay evidence, withheld "exculpatory evidence," and bolstered its case by "unheard evidence." In ground 4(1), Petitioner argues "judicial error" when the trial court inquired into the numerical division of the jury.

Petitioner raised each of these issues in his state habeas corpus action. (Resp. Ex. 1-3). The state habeas corpus court found that Petitioner's grounds were procedurally defaulted under O.C.G.A. § 9-14-48(d) as they were not raised at trial and on direct appeal.

A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Such procedural default can arise in two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, *Sykes* requires the federal court to respect the state court's decision. *Atkins v. Singletary*, 965 F.2d 952, 956 (11th Cir.1992), cert. denied, 515 U.S. 1165, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995); *Meagher v. Dugger*, 861 F.2d 1242, 1245 (11th Cir.1988). Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal. *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.1998), cert. denied, --- U.S. ----, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998); see also §28 U.S.C. 2254(b)(1)(A)(1994)(pre-AEDPA) ("An application for writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State...."). The Supreme Court held in

*Castille v. Peoples*, 489 U.S. 346, 351 (1989), that a federal habeas court could hold claims were procedurally defaulted, and therefore exhausted, "if it is clear that [the] claims are now procedurally barred under [state] law."

Petitioner uses his claim of "actual innocence," together with the recantation of the victim's testimony (which has in itself since been recanted by the victim) to excuse his procedural default.

A habeas petitioner asserting actual innocence to avoid a procedural bar must show that his conviction "probably resulted" from "a constitutional violation." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)). The petitioner meets the "probably resulted" standard by demonstrating, based on the new evidence, "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327, 329, 115 S.Ct. at 867-68. The "reasonable doubt" standard is not to be determined on the basis of the district court's independent judgment, but should be based on the district court's "probabilistic determination about what reasonable, properly instructed jurors would do." *Id*. at 329, 115 S.Ct. at 868. The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id*. at 324, 115 S.Ct. at 865. A petitioner meets the "threshold showing of innocence" justifying "a review of the merits of the constitutional claims" if the new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 115 S.Ct. at 862. *Arthur v. Allen*, 452 F3d 1234, 1245 (11th Cir. 2006).

" '[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through

which a habeas petitioner must pass to have this otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The Supreme Court, in assessing the adequacy of a petitioner's showing, stated:

> The meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup v. Delo*, 513 U.S. at 329.

A petitioner's constitutional claim for relief based upon his newly discovered evidence of innocence must be evaluated in light of the previous several years of proceedings in the case. In criminal cases, the trial is the paramount event for determining the defendant's guilt or innocence. Where, as here, a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the constitutional presumption of innocence disappears. Federal habeas courts do not sit to correct errors of fact, but to ensure that individuals are not imprisoned in violation of the Constitution. See, e.g., *Moore v. Dempsey*, 261 U.S. 86, 87-88, 43 S.Ct. 265, 265-266, 67 L.Ed. 543. Thus, claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceedings. *See Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770.

Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated when others, including the victim's stepsister, mother, clinical psychologist, medical examiner, and GBI agents testified regarding the four-year-old victim's statements accusing petitioner of

7

molesting her, specifically stating that the trial court erroneously admitted evidence pursuant to Georgia's child hearsay statute, O.C.G.A. § 24-3-16, without making a threshold determination of the declarant's reliability, and admitted testimonial extra judicial statements of the alleged victim in violation of the right of confrontation subsequently declared unconstitutional in *Crawford v. Washington*, 541 U.S. 36 (2004). [1] *Crawford* held that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by court, abrogating *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

However, the Supreme Court expressly addressed the issue of *Crawford*'s retroactive applicability. "This case presents the question whether, under the rules set out in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), our decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), is retroactive to cases already final on direct review. We hold that it is not." *Whorton v. Bockting*, 127 S.Ct. 1173 (2007). [2] Consequently, as *Crawford* was decided several years after petitioner's convictions were final on direct appeal, *Crawford* should not be applied retroactively to this case.

---

[1] Petitioner also raises in his responsive brief (doc. 37) for the first time the failure of the trial court to administer any kind of oath to the child victim as evidence that his trial was unfair and illegal. However, the undersigned determines that this claim is procedurally defaulted as it was never raised in the state courts. Petitioner's "actual innocence" claim does not excuse the failure to raise these issues below.

[2] Petitioner also claims that *Danforth v. Minnesota*, 128 S.Ct. 1029 (2008) is authority for applying the new rule in *Crawford* retroactively. However, *Danforth* merely asserts that no federal rule implicitly announced in some other source of federal law, prohibits States from giving broader retroactive effect to new rules of criminal procedure, *Danforth*, at 1046 - 1047, and is therefore not applicable authority for the case at bar.

The undersigned finds that the recanted testimony of the victim in this case, provided to the court in an affidavit, is not reliable, as the victim then recanted the affidavit in the subsequent deposition. No amount of bolstering affidavits by other family members regarding whether or not the victim was pressured to give the affidavit cures the inherent unreliability of what the victim has stated under oath on two separate occasions. Consequently, the testimony of the victim does not adequately support petitioner's claims of "actual innocence."[3] The credibility of the victim was determined by the jury during the trial, and nothing provided by petitioner overcomes that fact. The undersigned therefore cannot find that no reasonable juror, after hearing both the recanted testimony of the victim in the affidavit, and the subsequent recantation of the recantation during the deposition, would find that Petitioner was guilty beyond a reasonable doubt.

Additionally, the claims remain procedurally barred, as Petitioner has not made a sufficient showing of "actual innocence" and has not shown cause and prejudice.

***Grounds 4(2) and 4(3) New Procedural Default***

In grounds 4(2) and 4(3), Petitioner alleges "judicial error" in that the trial court gave a prejudicial "corrective instruction" and limited the jury's deliberations. However, Petitioner did not timely raise these issues in the state habeas corpus court. As a result, these claims have not been properly presented to Georgia's courts, and they are therefore procedurally defaulted under

---

[3] Petitioner quotes *Woodard v. State* 269 Ga. 317 (1998) for the proposition that the hearsay statements of the victim to others were improperly admitted, as that portion of the hearsay statute was struck down by the Supreme Court of Georgia. However, in *Woodard*, the Supreme Court of Georgia struck down a provision allowing the hearsay statements of a child witness to the act of molestation to be admitted to improperly bolster the witness' credibility. Notably, however, the Supreme Court of Georgia did not strike down the provision that allows the hearsay statements of a child victim.

9

Georgia's successive petition rule. O.C.G.A. § 9-14-51; *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998). They are barred from review on the merits; it follows that federal habeas corpus relief is procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

*Ground 5: Ineffective Assistance of Trial and Appellate Counsel*

In ground 5, Petitioner alleges that he received ineffective assistance of counsel because counsel: 1) failed to object to hearsay testimony; 2) failed to attack the State's expert's "mail order degree and qualifications"; 3) failed to object to inflammatory photographs; 4) failed to object to bolstering testimony; and 5) failed to "take advantage of the State's own scientific test which possibly provided exculpatory evidence."

The state habeas court found that plaintiff was represented at trial, post trial, and on appeal by James M. Walker, III, a practicing attorney in Georgia since 1990, whose private practice consisted of approximately 50 percent criminal defense. He had conducted between eight and ten jury trials and had represented several defendants charged with child molestation, and had filed between four and five appeals to the Georgia appellate courts.

Prior to trial, counsel anticipated that statements made by the child victim would possibly be admitted under the child hearsay statute, but did not deem it necessary to have the child examined by an independent expert or doctor. Counsel objected to the testimony by the medical doctor called by the state, and moved for acquittal and directed verdict. Mr. Walker did not perceive any prosecutorial or judicial misconduct. Counsel testified that he discussed the issues with Petitioner after the trial, including newly discovered evidence, and eventually raised all of the issues discussed in the post trial motion for new trial and in the direct appeal. Counsel testified that he would not have raised any issues that could not be supported by either law or fact, and believed that he raised the strongest claims available. ( Doc. 13, Resp. Exhibit 4).

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel. In order to establish that his counsel's representation was constitutionally defective, the petitioner must show (1) that counsel's representation was deficient, and (2) that the petitioner was prejudiced by his counsel's alleged deficient performance. The Court reiterated that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S., at 687-688, 104 S.Ct., at 2065. The Court further held, however, that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct., at 2068. This additional "prejudice" requirement was based on the Court's conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.*, at 691, 104 S.Ct., at 2067.

Petitioner bears the burden of establishing both of these elements by a preponderance of the evidence. *Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir.1995), cert. denied 517 U.S. 1214 (1996). However, the Supreme Court has warned that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

The state habeas court made conclusions of law, expressly setting out the test in *Strickland v. Washington*, and found that counsel for petitioner was not ineffective at any stage of his representation of petitioner.

Petitioner has failed to show that the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." This ground has no merit. Petitioner

has failed to show that the state court's decision is contrary to clearly established Supreme Court precedent; therefore the state court's decision is entitled to deference. *Williams v. Taylor*, 526 U.S. at 412.

***Grounds 6(1), (4), (5), and (6)***

In ground 6(1), Petitioner argues that his trial counsel did not object to several instances of hearsay testimony, where various individuals spoke of conversations with the then-four year old victim about the molestation. In ground 6(4), Petitioner alleges that counsel failed to make a motion in limine to prevent the state's witnesses from testifying to hearsay. In ground 6(5), Petitioner argues that counsel failed to have independent experts examine the minor victim. In ground 6(6), Petitioner alleges that counsel failed to present an alibi defense.

The state appellate court addressed these issues on the merits of the claim, making findings of fact and conclusions of law. The state habeas court determined that counsel, Mr. James Walker, who was also counsel on appeal, anticipated that statements by the child victim would possibly be admitted under Georgia's child hearsay statute, which allows such hearsay under certain limited circumstances. Counsel made a motion to strike the testimony of Dr. Womack, the state's expert, regarding statements made by the child victim. Counsel did not believe it necessary to have the victim examined by any independent medical or other expert. Counsel stated that Petitioner did not present him with specific witnesses who could provide him with an alibi. Counsel testified that he would not have raised any issues that could not be supported by law or fact, and believed that he raised the strongest claims available. ( Doc. 13, Resp. Exhibit 4).

The state habeas court made conclusions of law, expressly setting out the test in *Strickland v. Washington*, and found that counsel for Petitioner was not ineffective at any stage of his

representation of Petitioner.

Petitioner has failed to show that the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 526 U.S. at 412. These grounds have no merit.

*Grounds 6(2),(3),(7) and (8)*

In ground 6(2), Petitioner argues that counsel was ineffective for failing to object to a conversation between the victim and her stepfather, Eric Erickson, who was also a witness. In ground 6(3), Petitioner alleges ineffective assistance of counsel because counsel failed to object to the prosecution's opening statement, wherein several witnesses were named who were never later called to offer evidence. In ground 6(7), Petitioner contends that counsel was ineffective in failing to raise issues of prosecutorial misconduct. In ground 6(8), Petitioner alleges that counsel rendered ineffective assistance by failing to object to or appeal the "stacking" of charges and sentences.

Petitioner raised each of these issues in his state habeas corpus action, but not on the grounds of ineffective assistance of counsel. (Resp. Ex. 1-3). Instead, Petitioner raised the factual issues in each ground in his state habeas proceeding as trial court errors or prosecutorial misconduct. The state habeas corpus court found that Petitioner's grounds were procedurally defaulted under O.C.G.A. § 9-14-48(d) as they were not raised at trial and on direct appeal.

For the first time in this federal habeas petition, Petitioner contends that counsel was ineffective for his failure to object to the previously defaulted underlying issues.

When courts consider whether a federal claim was raised in state court proceedings, the exhaustion doctrine of 28 U.S.C. § 2254 requires that the grounds for relief must have been

"fairly presented" to the state court before they can be considered by a federal court in a habeas context. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In cases involving ineffective-assistance-of-counsel claims, the Eleventh Circuit has held that "a habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously." *Footman v. Singletary,* 978 F.2d 1207, 1211 (11th Cir.1992).

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court ." *O'Sullivan v. Boerckel,* 526 U.S. 838, 839, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (citing 28 U .S.C. §§ 2254(b)(1) & (c)). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (citing *Picard* ).

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In *Picard, supra,* the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *Id.,* 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a

constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec' y, Dep't of Corr.,* 377 F.3d 1317 (11th Cir.2004) (citing *Picard v. Connor,* 404 U.S. 270, 275-76 (1971); *Anderson v. Harless,* 459 U.S. 4, 6 (1982)). *See also Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) ("... mere similarity of claims is insufficient to exhaust.").

A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal. *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.1998), cert. denied, --- U.S. ----, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998). The Supreme Court held in *Castille v. Peoples*, 489 U.S. 346, 351 (1989), that a federal habeas court could hold claims were procedurally defaulted, and therefore exhausted, "if it is clear that [the] claims are now procedurally barred under [state] law."

As none of these claims were raised properly below as ineffective assistance of counsel, the state courts have not had an opportunity to pass upon the issue; the claims are consequently

unexhausted, and procedurally defaulted.[4]

*Ground 6(9)*

In this ground, Petitioner alleges ineffective assistance of counsel in failing to conduct a hearing to question a juror under the procedure enumerated in *Remmer v. U.S.*, 347 U.S. 227, 74 S.Ct. 450 (1954). In that case, the Supreme Court held that where the defendant learned for the first time after verdict that an unnamed person had remarked to a juror during trial that he could profit by bringing in a verdict favorable to the defendant, and the matter had been investigated, defendant was entitled to a hearing to determine the effect of the remark and investigation on the jury and whether defendant had been prejudiced thereby.

According to his supplemental brief in support of his petition, Petitioner states that counsel became aware of an incident involving juror John Wesley Barber that counsel believed was juror misconduct. Counsel pursued a juror misconduct issue at the motion for new trial hearing on March 12, 1998. Mr. Barber testified at the hearing, stating that one morning toward the end of the trial, he was on his way to the courthouse to resume jury duty when he was pulled over and searched by an officer with the Ashburn Police Department. Mr. Barber stated he went to the police department on his lunch break that day, where he spoke with the secretary/receptionist

---

[4] According to the trial transcript, Mr. Walker put on the record the following facts:
I just had a conversation with two ladies, one by the name of Ellen and the other is Janie, I believe. I didn't catch the last names, but they were telling me that as Nicole Dahn [the victim] left the witness room to testify, that her stepfather, Eric Erickson, told her, I'm proud of you, honey, as she entered the courtroom. Then after she exited the courtroom and came back and went to the witness room, they overheard Eric say again, I'm proud of you, honey, or I'm proud of you Nicole.
(Resp. Exh. 9 p. 98-99).
Therefore, contrary to Petitioner's allegation, the record shows that counsel did raise the issue to the trial court and placed on the record the facts regarding the stepfather's conversation with the minor victim.

16

Ms. Thompson to find out why he had been pulled over and searched. He was told the police department had received an anonymous call saying that he was carrying a gun to the courthouse.

Petitioner takes exception with the action by counsel to deem this "juror misconduct" instead of investigating the harassment the juror received from the police department. Petitioner argues that this should have raised a red flag that a *Remmer* violation had occurred. Petitioner contends that this was the kind of extrinsic evidence that could have affected Mr. Barber's impartiality.

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer*, 347 at 229 (internal citations omitted).

During the hearing, the court asked both the defense counsel and the prosecutor whether the Ashburn Police Department had anything at all to do with the investigation or prosecution of Petitioner's case. Both replied that the Ashburn Police Department had nothing to do with this case. (Resp. Exhibit 9 p. 19)

Petitioner asserts that this issue was raised in his amended brief in support of his petition, but was not addressed at all by the state habeas court. Petitioner is correct; he did raise the issue in his second motion to amend his petition dated August 20, 2001. A review of the state habeas hearing transcript reveals that Petitioner never developed the issue with counsel during the hearing. Petitioner questioned counsel on several issues; but never on the issue related to juror Barber.

Petitioner in his brief stated that "[l]ogically we must assume Mr. Barber may have voted

to convict the defendant based on anger towards employees of the Ashburn Police Department of which the Defendant was formerly employed." (Petitioner's second motion to amend his state habeas petition p. 8). Petitioner had two evidentiary hearings, one on September 8, 2000, and one on October 9, 2001, in which counsel appeared and testified. Petitioner failed to ask counsel any questions regarding this issue, and failed to present any evidence or testimony regarding the issue in his state habeas hearing.

Although the state court denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be contrary to or an unreasonable application of clearly established Supreme Court law. See *Helton v. Secretary for Dept. of Corrections,* 233 F.3d 1322, 1326-27 (11th Cir.2000); *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *Hannon v. Cooper,* 109 F.3d 330, 335 (7th Cir.1997). A habeas petitioner exhausts available state remedies when he fairly presents his claim for a state remedy even if the state never acts on his claim. *See Breazeale v. Bradley,* 582 F.2d 5, 6 (5th Cir. 1978); *Ogle v. Johnson*, 488 F.3d 1364 (11th Cir. 2007).

The undersigned concludes that regardless of whether Petitioner exhausted this claim, he is not entitled to federal habeas relief. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

It is Petitioner's burden to show that his counsel was ineffective for failing to raise this *Remmer* issue at the trial court level. Petitioner must show (1) that counsel's representation was deficient, and (2) that the petitioner was prejudiced by his counsel's alleged deficient performance. "The defendant must show that there is a reasonable probability that, but for

18

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra*, at 694, 104 S.Ct., at 2068. Petitioner must prove both prongs by a preponderance of the evidence. *Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir.1995), cert. denied 517 U.S. 1214 (1996). This he has failed to do. Even when presented with the opportunity to question counsel at his state habeas evidentiary hearing, Petitioner failed to develop this issue. All he has offered here is speculation that Mr. Barber could have been biased against him because of the actions of the Ashburn Police Department, and a bare assertion that a *Remmer* hearing would have resulted in this juror being excused for bias, which would then have resulted in a not guilty verdict. Clearly, this ground is speculative at best, and is without merit.

Consequently, it is the RECOMMENDATION of the undersigned that this petition for habeas corpus relief be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Court, Middle District of Georgia, WITHIN FOURTEEN (14) DAYS of being served with a copy.

**SO RECOMMENDED**, this 7th day of December, 2010.

//S Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
UNITED STATES MAGISTRATE JUDGE

msd